FILED: 7/10/2015

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 15-502 GHK (Ex) | Date | July 10, 2015 |
|---|---|---|---|
| Title | *Richard Friedman v. Hans Zimmer, et al.* | | |

| **Presiding: The Honorable** | **GEORGE H. KING, CHIEF U. S. DISTRICT JUDGE** | |
|---|---|---|
| Beatrice Herrera | N/A | N/A |
| Deputy Clerk | Court Reporter / Recorder | Tape No. |

| Attorneys Present for Plaintiffs: | Attorneys Present for Defendants: |
|---|---|
| None | None |

**Proceedings:** **(In Chambers) Order re:** Motion to Dismiss First, Third, Fourth, and Fifth Claims (Dkt. 23)

This matter is before us on the above-captioned Motion. We have considered the papers filed in support of and in opposition to the Motion and deem this matter appropriate for resolution without oral argument. L.R. 7-15. As the Parties are familiar with the facts, we will repeat them only as necessary. Accordingly, we rule as follows:

**I.     Background**

On January 22, 2015, Plaintiff Richard Friedman ("Plaintiff") filed this action in federal court. On March 23, 2015, Plaintiff filed a First Amended Complaint ("FAC"). (Dkt Plaintiff alleges that the score to *12 Years A Slave* (the "Film") infringes on his copyright to a musical composition called *To Our Fallen* (the "Composition"). (FAC at ¶¶ 18, 23.) He asserts seven claims in connection with this allegation. Defendants Hans Zimmer (individually and doing business as Remote Control Songs), Twentieth Century Fox Film Corporation, Fox Searchlight Pictures, Inc., Fox Entertainment Group, Inc., New Regency Productions, Inc., River Road Entertainment, LLC, Plan B Entertainment, Inc., Remote Control Productions, Inc., and Sony Music Entertainment ("SME") (collectively, the "Moving Defendants") bring this Motion to Dismiss the First, Third, Fourth, and Fifth Claims (the "Motion").

In the First Claim, Plaintiff alleges that all the Moving Defendants except SME infringed his copyright in the Composition by producing and distributing the Film in the U.S. and throughout the world. (*Id.* at ¶¶ 17-27.) In the Third Claim, Plaintiff alleges that the Moving Defendants violated the Lanham Act by misrepresenting the authorship of the Film's score in advertising and promotion for the Film. (*Id.* at ¶¶ 32-42.) In the Fourth Claim, Plaintiff alleges that the Moving Defendants violated his moral rights under the German Copyright Statute of 1965, which provides, among other things, that an "author shall have the right of recognition of his authorship of the work." (Urheberrechtsgesetz [UrhG] Copyright Law, § 13; *see also* FAC at ¶¶ 43-45.) In the Fifth Claim, Plaintiff alleges that the Moving Defendants violated his moral rights under the French Code of Intellectual Property of 1992, which

FILED: 7/10/2015

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 15-502 GHK (Ex) | Date | July 10, 2015 |
|---|---|---|---|
| Title | *Richard Friedman v. Hans Zimmer, et al.* | | |

similarly provides an author with "the right of respect for the name of the author." (Intellectual Property Code [IPC] art. L121-1; *see also* FAC at ¶¶ 46-48.)[1]

### II. Legal Standard

In order to survive a motion to dismiss, a complaint must set forth "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). The complaint must contain factual allegations sufficient to "state a claim to relief that is plausible on its face." *Id.* at 570. In considering a motion to dismiss, we must accept the allegations of the complaint as true and construe them in the light most favorable to the plaintiff. *Cousins v. Locker*, 568 F.3d 1063, 1067 (9th Cir. 2009). We need not accept as true, however, legal conclusions "cast in the form of factual allegations." *W. Mining Council v. Watt*, 643 F.2d 618, 624 (9th Cir. 1981). "In sum, for a complaint to survive a motion to dismiss, the non-conclusory 'factual content,' and reasonable inferences from that content, must be plausibly suggestive of a claim entitling the plaintiff to relief." *Moss v. U.S. Secret Serv.*, 572 F.3d 962, 969 (9th Cir. 2009).

### III. Copyright Infringement

The Moving Defendants allege that Plaintiff's First Claim, for copyright infringement, fails because he does not allege specific infringing conduct by each of the Moving Defendants,[2] relying instead on a broad assertion that they all "produced and distributed" the Film "in the United States and throughout the world." (FAC at ¶ 23.) The Moving Defendants argue that lumping defendants together is insufficient to state a claim because Federal Rule of Civil Procedure 8 requires Plaintiff to allege how each defendant infringed the plaintiff's copyright. More specifically, the Moving Defendants argue that an allegation that they all distributed the film "in the United States and throughout the world" is problematic because the Copyright Act does not apply extraterritorially. *See Subafilms, Ltd. v. MGM-Pathe Commc'ns Co.*, 24 F.3d 1088, 1098 (9th Cir. 1994). To the extent that any of the Moving Defendants engaged in wholly extraterritorial conduct, they may not be liable at all. Furthermore, the Moving Defendants argue that Plaintiff's allegation that they all "produced and distributed" the Film is

---

[1] In the Second Claim, Plaintiff alleges that SME infringed his rights to the Composition by distributing copies of the Film's soundtrack. (FAC at ¶¶ 28-31.) In the Sixth and Seventh Claims, Plaintiff alleges that Defendant Imagem Production Music LLC ("Imagem") breached its contractual obligation as an assignee of Plaintiff's copyright by refusing "to participate in this action as a co-plaintiff" and "disclaiming any interest in pursuing this matter or assisting Plaintiff to protect his rights as the beneficial owner of the copyrighted Composition." (*Id.* at ¶¶ 49-61.) Imagem has been served with the FAC but has not yet filed a Response. (*See* Dkt. 39 (stipulation extending time to respond to July 13, 2015).)

[2] Plaintiff's copyright infringement claim is actually directed at all the Moving Defendants except for SME. For convenience, however, we will refer to the "Moving Defendants" throughout our discussion of this claim.

**FILED: 7/10/2015**

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 15-502 GHK (Ex) | Date | July 10, 2015 |
|---|---|---|---|
| Title | *Richard Friedman v. Hans Zimmer, et al.* | | |

overbroad in that, if one of the companies had a limited role in the production such that they did not make copies of or distribute the score, they may not be liable for direct infringement. (*See* Mot. at 4 ("[A] defendant's involvement in production of a motion picture, without more, does not render the defendant liable for copyright infringement based upon allegedly infringing material included in the film's score.").)

We disagree that Plaintiff needs to be more specific in his pleadings at this stage. Before discovery, Plaintiff has no reasonable means of determining the roles that the Moving Defendants played in producing and distributing the Film. Though some courts have found that lumping defendants together can render a claim infirm, even under Rule 8's liberal pleading standard, they have done so only in situations where the pleadings are largely incomprehensible. *See, e.g.*, *Flores v. EMC Mort. Co.*, 997 F. Supp. 2d 1088, 1103 (E.D. Cal. 2014) (dismissing 86-page "rambling" wrongful foreclosure complaint that "lack[ed] facts of defendants' specific wrongdoing to provide fair notice as to what each defendant is to defend," "lack[ed] cognizable claims or legal theories upon which to support defendants' liability," "rest[ed] on overbroad conclusions that defendants were prohibited to [sic] foreclose on the property," and "lump[ed]" both defendants and nondefendants together without "distinguish[ing] adequately claims and alleged wrongs among defendants and others"); *In re Providian Fin. Corp. ERISA Litig.*, 2002 WL 31785044, at *4 (N.D. Cal. Nov. 14, 2002) (dismissing an ERISA complaint where "plaintiffs have lumped the various classes of defendants into an undifferentiated mass and alleged that all of them violated all of the asserted fiduciary duties"). Plaintiff's infringement claim may be based on a generalized allegation, but it fairly puts the Moving Defendants on notice of the basis for his claim—their involvement in making and distributing a film containing infringing material. If some of the Moving Defendants had no involvement in creating and reproducing the Film's score or in distributing the Film, that is a defense they can raise in their Answer and we can resolve the issue at summary judgment.[2]

Accordingly, the Motion is **DENIED** as to Plaintiff's First Claim.

## IV. Lanham Act

In Plaintiff's Third Claim, he alleges that the Moving Defendants (including SME) violated 15 U.S.C. § 1125(a)(1)(B), which prohibits "misrepresent[ing] the nature, characteristics, qualities, or geographic origins of . . . goods, services, or commercial activities." Specifically, Plaintiff alleges that the Moving Defendants' advertising and promotional materials falsely advertised the film as featuring "Music by Hans Zimmer," when they should have stated "Music by Richard Friedman." The Moving

---

[2] Plaintiff is advised, however, that it should promptly amend its Complaint after it has learned from discovery what theory or theories of liability he plans to rely on for each specific Defendant. If Plaintiff plans to resort to a secondary theory of liability as to any of the Defendants, the Complaint should expressly assert that theory.

**FILED: 7/10/2015**

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 15-502 GHK (Ex) | Date | July 10, 2015 |
|---|---|---|---|
| Title | *Richard Friedman v. Hans Zimmer, et al.* | | |

Defendants argue that this claim is foreclosed by the Supreme Court's decision in *Dastar Corp. v. Twentieth Century Fox Film Corp.*, 539 U.S. 23 (2003).  We agree.

  In *Dastar*, the defendant took a television series that was in the public domain, made minor edits to it, then sold it to the public as its own work without crediting the original series.  *Id.* at 27.  The plaintiff sued under 15 U.S.C. § 1125(a)(1)(A) of the Lanham Act, which prohibits, among other things, misrepresentations that cause "confusion . . . as to the origin" of the goods.  *Id.*  The Supreme Court rejected the plaintiff's claim, finding that "origin" refers only to the "manufacturer or producer of the physical 'goods,'" not "the person or entity that originated the ideas or communications that 'goods' embody or contain."  *Id.* at 31-32.  The Court interpreted the statute in this way to avoid creating an overlap between the Lanham Act and other intellectual property laws:

> The rights of a patentee or copyright holder are part of a carefully crafted bargain, under which, once the patent or copyright monopoly has expired, the public may use the invention or work at will and without attribution.  Thus, in construing the Lanham Act, we have been careful to caution against misuse or over-extension of trademark and related protections into areas traditionally occupied by patent or copyright. . . .  Assuming for the sake of argument that Dastar's representation of itself as the "Producer" of its videos amounted to a representation that it originated the creative work conveyed by the videos, allowing a cause of action under § 43(a) for that representation would create a species of mutant copyright law that limits the public's federal right to copy and to use expired copyrights.

*Id.* at 34 (citations and internal quotation marks omitted).

  Plaintiff's claim is asserted under 15 U.S.C. § 1125(a)(1)(B), not 15 U.S.C. § 1125(a)(1)(A), but it is essentially the same claim as the *Dastar* plaintiff's.  Both claims are premised on the theory that the Lanham Act prohibits a seller from misrepresenting "the person or entity that originated the ideas or communications that 'goods' embody or contain."  *Dastar*, 539 U.S. at 32.  Plaintiff contends that the Supreme Court left open the possibility of asserting a *Dastar*-type claim under section 1125(a)(1)(B) when it stated in dicta:

> If . . . the producer of a video that substantially copied [a TV] series were, in advertising or promotion, to give purchasers the impression that the video was quite different from that series, then one or more of the respondents might have a cause of action—not for reverse passing off under the "confusion ... as to the origin" provision of § 43(a)(1)(A), but for misrepresentation under the "misrepresents the nature, characteristics [or] qualities" provision of § 43(a)(1)(B).  For merely saying it is the producer of the video, however, no Lanham Act liability attaches to Dastar.

**FILED: 7/10/2015**

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 15-502 GHK (Ex) | Date | July 10, 2015 |
|---|---|---|---|
| Title | *Richard Friedman v. Hans Zimmer, et al.* | | |

*Id.* at 38.

We disagree with Plaintiff that this passage suggests his claim is viable under 15 U.S.C. § 1125(a)(1)(B). First, the passage states only that a *Dastar*-type claim might be viable if the seller's misrepresentation leads consumers to believe they were buying one product when they were really buying another. *See Baden Sports, Inc. v. Molten USA, Inc.*, 556 F.3d 1300, 1307 (Fed. Cir. 2009) ("While the dictum in *Dastar* might suggest that the Supreme Court left open the possibility of a claim arising from a misrepresentation concerning the qualities of certain goods, it does not necessarily suggest that claims based on false designation of authorship are actionable under Section 43(a)(1)(B)."). Second, given the Court's concerns about creating overlap between the Lanham Act and other intellectual property regimes, it would have made little sense for the Supreme Court to reject the *Dastar* plaintiff's claim under 15 U.S.C. § 1125(a)(1)(A) but permit the same sort of claim to be asserted under a different prong of the same statute. *See Antidote Int'l Films, Inc. v. Bloomsbury Pub., PLC*, 467 F. Supp. 2d 394, 400 (S.D.N.Y. 2006) ("[T]he holding in *Dastar* that the word 'origin' in § 43(a)(1)(A) refers to producers, rather than authors, necessarily implies that the words 'nature, characteristics, [and] qualities' in § 43(a)(1)(B) cannot be read to refer to authorship. If authorship were a 'characteristic[ ]' or 'qualit[y]' of a work, then the very claim *Dastar* rejected under § 43(a)(1)(A) would have been available under § 43(a)(1)(B).").

The Ninth Circuit has interpreted *Dastar* similarly in *Sybersound Records, Inc. v. UAV Corp.*, 517 F.3d 1137 (9th Cir. 2008). *Sybersound* involved a dispute over unlicensed karaoke songs. The plaintiff alleged a violation of the Lanham Act based on false representations of "licensing status," arguing that such status was "part of the nature, characteristics, or qualities of . . . karaoke products." *Id.* at 1144. In rejecting this argument, the Ninth Circuit said:

> Following the reasoning in *Dastar* . . . to avoid overlap between the Lanham and Copyright Acts, the nature, characteristics, and qualities of karaoke recordings under the Lanham Act are more properly construed to mean characteristics of the good itself, such as the original song and artist of the karaoke recording, and the quality of its audio and visual effects.

*Id.* While Plaintiff insists that the Ninth Circuit's reference to the "artist of a karaoke recording" supports his argument that a false designation of authorship is still viable under 15 U.S.C. § 1125(a)(1)(B), such a reading would not "follow" the reasoning of *Dastar* or "avoid overlap between the Lanham and Copyright Acts" at all. In fact, courts have interpreted *Sybersound* to stand for the opposite proposition. *See Baden Sports, Inc.*, 556 F.3d at 1307 (describing *Sybersound* as "excluding false authorship claims from the Lanham Act in order to avoid overlap between the Lanham and Copyright Acts") (internal quotation marks omitted); *A.H. Lundberg Associates, Inc. v. TSI, Inc.*, 2014 WL 5365514, at *4 (W.D. Wash. Oct. 21, 2014) (citing *Sybersound* as authority for the rule that "claims of false designations of authorship as false advertisement are not actionable under § 1125(a)(1)(B) in the

**FILED: 7/10/2015**

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

### CIVIL MINUTES - GENERAL

| Case No. | CV 15-502 GHK (Ex) | Date | July 10, 2015 |
|---|---|---|---|
| Title | *Richard Friedman v. Hans Zimmer, et al.* | | |

Ninth Circuit."). The Ninth Circuit's reference to an "artist" being an actionable characteristic of a karaoke song means only that a seller cannot falsely advertise a recording as being performed by one artist when it is really performed by another. For instance, a seller cannot advertise a CD as containing "All Along the Watchtower" sung by Jimmy Hendrix when it actually contains a recording of Bob Dylan singing the same song. That would give consumers the impression that the CD they were buying was "quite different" from what it actually was, which would be a misrepresentation of the nature, characteristics, or qualities of the good. *See Dastar*, 539 U.S. at 32. Those are not the facts alleged here.

Plaintiff also argues that that the Ninth Circuit signaled its approval of false designation of authorship claims in *Photomedex, Inc. v. Irwin*, 601 F.3d 919 (9th Cir. 2010). In *Photomedex*, the plaintiff alleged that the defendants violated the Lanham Act and California unfair competition laws by, among other things, representing that one of the defendants, Irwin, invented a medical device when he had not. *Id.* at 922. The defendants moved for summary judgment on the grounds that Irwin did, in fact, invent the device and therefore the representation was true. *See Photomedex, Inc. v. RA Med. Sys. Inc.*, 2007 WL 3203039, at *5 (S.D. Cal. Oct. 29, 2007). The district court agreed and granted summary judgment on those grounds. *Id.* ("[I]t appears Defendant Irwin was significantly involved with the development of the laser at its infancy and his name is listed as an inventor on the patent itself. Therefore, this Court finds Defendant Irwin did not misrepresent himself when stating he was an inventor."). The Ninth Circuit reversed, finding that Irwin was not the sole inventor of the product and therefore Defendant's claim may have been misleading:

> Defendants' commercial depiction of Irwin as "inventor" of the XTRAC is actionable to the extent it misled consumers into believing that Irwin was the sole inventor or made more than his actual share of inventive contributions. *See Cook, Perkiss & Liehe, Inc. v. N. Cal. Collection Serv., Inc.*, 911 F.2d 242, 245 (9th Cir. 1990) ("[A] false advertising cause of action under the [Lanham] Act is not limited to literal falsehoods; it extends to false representations made by implication or innuendo."); *see also Ariz. Cartridge Remanufacturers Ass'n, Inc. v. Lexmark Int'l, Inc.*, 421 F.3d 981, 985–86 (9th Cir. 2005) (same for California state law actions). Calling Irwin the "inventor of the XTRAC" might have been misleading. Evidence supplied by PhotoMedex shows that Irwin was only named as an inventor in patents for XTRAC's cooling apparatus and that other individuals designed the bulk of the XTRAC system. Thus, we vacate summary judgment for the claims relating to Defendants' representations that Irwin was the inventor of the XTRAC and remand those claims for further proceedings.

*Photomedex,* 601 F.3d at 932-33.

Even to the extent that a false inventor claim is analogous to Plaintiff's false author claim, we do not think *Photomedex* can be relied on for the proposition that *Dastar*-type claims are viable under

**FILED: 7/10/2015**

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 15-502 GHK (Ex) | Date | July 10, 2015 |
|---|---|---|---|
| Title | *Richard Friedman v. Hans Zimmer, et al.* | | |

section 1125(a)(1)(B). Plaintiff cites no case that relies on *Photomedex* for this proposition, and we have not discovered one either. The question of whether a false designation of authorship/inventorship is actionable post-*Dastar* was not raised before the trial court or on appeal in *Photomedex*, which explains why the Ninth Circuit court failed to discuss or cite either *Dastar* or *Sybersound*. The Ninth Circuit was apparently asked only to determine the narrow question of whether Irwin's inventor claim was "misleading" or not. Thus, the court never considered the separate question of whether his statement, misleading or not, related to a nature, characteristic, or quality of a good. To the extent that *Photomedex* suggests that a *Dastar*-type claim is viable under that prong of the Lanham Act, we think it is inconsistent with *Dastar* and *Sybersound* and not controlling.

Accordingly, the Motion is **GRANTED** as to Plaintiff's Third Claim.

### V.     Moral Rights under German and French Law

In his Fourth and Fifth Claims, Plaintiff alleges that the Moving Defendants violated his moral rights, specifically his right of authorship or attribution,[3] under German and French copyright law. Plaintiff has no moral rights under the U.S. Copyright Act, which recognizes moral rights only for works of visual art. *See* 17 U.S.C. § 106A(a) ("[T]he author of a work of visual art (1) shall have the right (A) to claim authorship of that work, and (B) to prevent the use of his or her name as the author of any work of visual art which he or she did not create."). However, Plaintiff may have moral rights under French or German law and may be able to assert those rights with respect to any infringing conduct that occurred in France or Germany.

While the Ninth Circuit has "recognized" the "potential" for U.S. courts to entertain copyright claims arising under foreign laws, *Creative Tech., Ltd. v. Aztech Sys. Pte., Ltd.*, 61 F.3d 696, 702 (9th Cir. 1995), it has never held that we are compelled to entertain such claims. *See Subafilms, Ltd. v. MGM Pathe Commc'ns Co.*, 24 F.3d 1088, 1095 n.10 (9th Cir. 1994) (observing, in a footnote, that "at least one court has recognized that actions under the copyright laws of other nations may be brought in United States" but also citing authority to the contrary); *X17, Inc. v. Hollywood.TV, Inc.*, 2008 WL 4527865, at *5 (C.D. Cal. June 24, 2008) ("While [] opinions [like *Creative Tech.*] indicate that the exercise of subject matter jurisdiction over foreign copyright claims is not necessarily erroneous, they do not indicate that a court is required to exercise such jurisdiction."). Notably, in the cases where the

---

[3] "Moral rights" are "those rights of a spiritual, non-economic and personal nature" which "spring from a belief that an artist in the process of creation injects his spirit into the work and that the artist's personality, as well as the integrity of the work, should therefore be protected and preserved." *Carter v. Helmsley-Spear, Inc.*, 71 F.3d 77, 81 (2d Cir. 1995). One such moral right is the right of attribution or authorship, which "generally consists of the right of an artist to be recognized by name as the author of his work or to publish anonymously or pseudonymously, the right to prevent the author's work from being attributed to someone else, and to prevent the use of the author's name on works created by others, including distorted editions of the author's original work." *Id.*

**FILED: 7/10/2015**

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 15-502 GHK (Ex) | Date | July 10, 2015 |
|---|---|---|---|
| Title | *Richard Friedman v. Hans Zimmer, et al.* | | |

Ninth Circuit has referred to the possibility of U.S. courts entertaining foreign copyright claims, the relevant foreign claims asserted were not based on rights with no clear parallel in U.S. law. *See Creative Tech., Ltd.*, 61 F.3d at 699 (foreign claims related to manufacturing and distribution of allegedly infringing products in Singapore); *Subafilms, Ltd. v. MGM Pathe Commc'ns Co.*, 24 F.3d at 1089 (9th Cir. 1994) (plaintiff alleged that overseas distribution of videocassettes was infringing). Plaintiff has cited no case in which a U.S. court has entertained foreign moral rights claims, and we are aware of none.

There is also authority for declining jurisdiction. In *ITSI T.V. Productions, Inc. v. California Authority of Racing Fairs,* the Eastern District of California declined to entertain claims under Mexican copyright law because it could "discern no clear authority for exercising such jurisdiction" and "American courts should be reluctant to enter the bramble bush of ascertaining and applying foreign law without an urgent reason to do so." 785 F. Supp. 854, 866 (E.D. Cal. 1992).

We are of the same mind, at least as to these particular foreign law claims. First, Plaintiff has not made a sufficient showing that we have subject matter jurisdiction over his moral rights claims. *See Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994) ("Federal courts are courts of limited jurisdiction. . . . It is to be presumed that a cause lies outside this limited jurisdiction, and the burden of establishing the contrary rests upon the party asserting jurisdiction.") (citations omitted). The FAC expressly notes that there is supplemental jurisdiction for Plaintiff's "state law unfair competition claims," but it is silent as to our jurisdiction for his moral rights claims. (FAC at ¶ 2.) His Opposition does not address the subject either. (Opp'n at 21-22.)

Second, even assuming that Plaintiff intended to assert that we have supplemental jurisdiction over these claims, we have discretion to decline supplemental jurisdiction "in exceptional circumstances" for "compelling reasons." *See* 28 U.S.C. § 1367(c). For the reasons set forth below, Plaintiff's assertion of moral rights claims based on foreign laws represents an exceptional circumstance, and we think there are compelling reasons to decline jurisdiction. *See Voda v. Cordis Corp.*, 476 F.3d 887, 898 (Fed. Cir. 2007) (declining to exercise supplemental jurisdiction over foreign patent claims because of "comity, judicial economy, convenience, fairness, and other exceptional circumstances"); *see also X17*, 2008 WL 4527865, at *5 (noting that foreign copyright claims may be dismissed by declining to exercise supplemental jurisdiction).

Moral rights are a largely unfamiliar concept in U.S. copyright law. *See Carter v. Helmsley-Spear, Inc.*, 71 F.3d 77, 82 (2d Cir. 1995) ("Although moral rights are well established in the civil law, they are of recent vintage in American jurisprudence. Federal and state courts typically recognized the existence of such rights in other nations, but rejected artists' attempts to inject them into U.S. law."); 3-8D Nimmer on Copyright § 8D.02 [C] ("At its enactment, the Copyright Act of 1976 expressly conferred virtually no moral rights."). Enforcing foreign laws that are materially different from U.S. laws raises public policy and separation of powers concerns. *See* 7 Patry on Copyright § 25:105 (noting

**FILED: 7/10/2015**

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 15-502 GHK (Ex) | Date | July 10, 2015 |
|---|---|---|---|
| Title | *Richard Friedman v. Hans Zimmer, et al.* | | |

that countries have no obligation to further the governmental interests of another sovereign, that enforcement of foreign laws may contradict U.S. policy, and that "federal courts do not exist to make foreign policy . . . nor do they have inherent expertise in the area"). These concerns are particularly salient in the context of moral rights. When Congress enacted the Berne Convention Implementation Act of 1988, it had the opportunity to broadly grant authors the same moral rights that they would enjoy in any other nation in accordance with the terms of the treaty. *See* Berne Convention Article 6*bis* ("Independently of the author's economic rights, and even after the transfer of the said rights, the author shall have the right to claim authorship of the work and to object to any distortion, mutilation or other modification of, or other derogatory action in relation to, the said work, which would be prejudicial to his honor or reputation."). But faced with "an avalanche of opposition to moral rights" from even "the bill's most vociferous advocates," Congress expressly declined to enact that aspect of the treaty. 3-8D Nimmer on Copyright § 8D.02[C]; *see also* Act of October 31, 1988, § 3, Pub. L. No. 100-568, 100th Cong., 2d Sess., 102 Stat. 2853 (declaring that the Berne Covention Implementation Act does not "expand or reduce" an author's existing rights of attribution or integrity under domestic law). Instead, two years later, it enacted the much more modest statute that exists today for protecting moral rights in certain works of visual art. *See* 7 Patry on Copyright § 23:23 n.8 (noting that the insertion of section 106A into the Copyright Act in 1990 was the first instance of "federal moral rights" and even then, Congress granted such rights to only "a narrow category of visual arts"). We think it prudent to decline to exercise supplemental jurisdiction where Plaintiff seeks to enforce rights that Congress has clearly and deliberately decided not to provide under U.S. law.

Additionally, considerations of judicial economy and convenience militate against the exercise of supplemental jurisdiction. First, because of the limited caselaw in the U.S. concerning moral rights in general and the absence of any caselaw on German and French moral rights specifically, we will be forced to consume far more judicial resources addressing these claims than a German or French court would. *See Voda*, 476 F.3d at 903 ("Because of our lack of institutional competence in the foreign patent regimes at issue in this case, more judicial resources could be consumed by the district court than the courts of the foreign patent grants."). Second, the significant risk of jury confusion in a trial involving both domestic and foreign law copyright claims may require us to conduct a separate trial for Plaintiff's moral rights claims, resulting in the expenditure of even more judicial resources. *Id.* (noting that "the likelihood of jury confusion . . . result[ing] in separate trials" is a factor cutting against the exercise of supplemental jurisdiction over foreign patent law claims). And finally, the "cost of obtaining and translating evidence, especially experts" in foreign copyright law, to resolve these claims may be prohibitive. *Id.* For all these reasons, we exercise our discretion to decline supplemental jurisdiction over Plaintiff's moral rights claims.

Accordingly, the Motion is **GRANTED** as to Plaintiff's Fourth and Fifth Claims.

**FILED: 7/10/2015**

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 15-502 GHK (Ex) | Date | July 10, 2015 |
|---|---|---|---|
| Title | *Richard Friedman v. Hans Zimmer, et al.* | | |

**VI.   Conclusion**

In light of the foregoing, the Moving Defendants' Motion is **GRANTED in part** and **DENIED in part**. Plaintiff's Third Claim is **DISMISSED with prejudice and without leave to amend** because amendment would be futile. Plaintiff's Fourth and Fifth Claims are **DISMISSED without prejudice to their assertion in a foreign forum**. Plaintiff's First Claim is not dismissed. Defendants are hereby **ORDERED** to file an answer to the remaining claims in the FAC **within fourteen days hereof**. *See* Fed. R. Civ. P. 12(a)(4)(A).

**IT IS SO ORDERED.**

|  -- | : | -- |
|---|---|---|
| Initials of Deputy Clerk | | DG for Bea |